No. 13-80078

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

VICTOR PARSONS, et al.,

*Plaintiffs/Respondents,*

v.

CHARLES RYAN, et al.,

*Defendants/Petitioners.*

_____

ON RULE 23(F) PETITION FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
NO. CV 12-00601-NVW-PHX

_____

**PLAINTIFFS-RESPONDENTS' ANSWER TO
PETITION FOR PERMISSION TO APPEAL FROM ORDER
GRANTING CLASS CERTIFICATION**

_____

Daniel C. Barr
Amelia M. Gerlicher
Kirstin T. Eidenbach
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 351-8000

Daniel Pochoda
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
(602) 650-1854

Donald Specter
Alison Hardy
Sara Norman
Corene Kendrick
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
(510) 280-2621

Caroline Mitchell
**JONES DAY**
555 California Street, 26th Floor
San Francisco, California 94104
(415) 875-5712

David C. Fathi
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
(202) 548-6603

*Attorneys for Prisoner Plaintiffs/Respondents*

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................1

Statement of Facts .......................................................................................3

Question Presented.......................................................................................8

Argument......................................................................................................8

    I.      THE PETITION DOES NOT MEET THE TEST FOR RULE 23(F)
           REVIEW ........................................................................................8

          A.    The Class Certification Order Involves Routine Issues of
              Law Unlikely to Evade Review after Final Judgment...............9

          B.    The District Court's Order is Not Manifestly Erroneous ........11

              1.    Commonality ..............................................................12

              2.    Typicality....................................................................17

              3.    Rule 23(b)(2) ..............................................................17

              4.    System-wide practices .................................................19

Conclusion .................................................................................................20

# TABLE OF AUTHORITIES

**Page**

<u>C</u>ASES

*Agne v. Papa John's Int'l, Inc.*,
 286 F.R.D. 559 (W.D. Wash. 2012) ....................................................................3

*Armstrong v. Davis*,
 275 F.3d 849 (9th Cir. 2001) ....................................................................passim

*Brown v. Plata*,
 131 S. Ct. 1910 (2011)...............................................................................passim

*Butler v. Suffolk Cnty.*,
 --- F.R.D. ---, 2013 WL 1136547 (E.D.N.Y. Mar. 19, 2013)............................16

*Chamberlan v. Ford Motor Co.*,
 402 F.3d 952 (9th Cir. 2005) ...................................................................1, 8, 11

*Chief Goes Out v. Missoula Cnty.*,
 2013 WL 139938 (D. Mont. Jan. 10, 2013) ....................................................16

*Comcast v. Behrend*,
 569 U.S. ___, No. 11-864 (Mar. 27, 2013).......................................................16

*Estelle v. Gamble*,
 429 U.S. 97 (1976)............................................................................................14

*Farmer v. Brennan*,
 511 U.S. 825 (1994)..........................................................................................12

*Floyd v. City of New York*,
 283 F.R.D. 153 (S.D.N.Y. 2012) ........................................................................3

*Hawkins v. Comparet-Cassani*,
 251 F.3d 1230 (9th Cir. 2001) .........................................................................10

*Hevesi v. Citigroup Inc.*,
 366 F.3d 70 (2d Cir. 2004) ...............................................................................10

*Ind. Prot. & Advocacy Servs. Comm'n v. Comm'r*,
 2012 WL 6738517 (S.D. Ind. Dec. 31, 2012) ..................................................16

# TABLE OF AUTHORITIES
## (continued)

Page

**CASES (CONT.)**

*Mathis v. GEO Grp., Inc.*,
2012 WL 600865 (E.D.N.C. Feb. 23, 2012) ...................................................16

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
422 F.3d 782 (9th Cir. 2005) .............................................................................20

*Ortega-Melendres v. Arpaio*,
836 F. Supp. 2d 959 (D. Ariz. 2011) *aff'd sub nom. Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ...............................................................................3

*Pierce v. Cnty. of Orange*,
526 F.3d 1190 (9th Cir. 2008) .....................................................................9, 10

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2009) ...........................................................................18

*Rosas v. Baca*,
2012 WL 2061694 (C.D. Cal. June 7, 2012)....................................................16

*Russell v. United States*,
2012 WL 2343369 (N.D. Cal. June 20, 2012)......................................................3

*Schilling v. Kenton Cnty., Ky.*,
2011 WL 293759 (E.D. Ky. Jan. 27, 2011)......................................................16

*Shook v. Board of County Commissioners*,
543 F.3d 597 (10th Cir. 2008) .....................................................................18, 19

*Smith v. Sheriff of Cook County*,
2008 WL 4866071 (N.D. Ill. July 16, 2008) ....................................................16

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .............................................................................17

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
262 F.3d 134 (2d Cir. 2001) ..............................................................................11

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CASES (CONT.)**

*Theriot v. Parish of Jefferson*,
185 F.3d 477 (5th Cir. 1999) ..............................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011).............................................................passim

*Walters v. Reno*,
145 F.3d 1032 (9th Cir. 1998) ..........................................................15


**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 .................................................passim

## Introduction

Defendants' Petition for Permission to Appeal from the district court's class certification order does not meet any of the factors for interlocutory review under Fed. R. Civ. P. ("Rule") 23(f).  Because the district court ruled correctly, and nothing will be gained by hearing an appeal at this juncture, this Court should deny the Petition.

Defendants argue that their Petition should be granted because the decision presents an unsettled issue of class action law that is likely to evade later review and because the decision is "manifestly erroneous."  *See Chamberlan v. Ford Motor Co*., 402 F.3d 952, 959 (9th Cir. 2005).  Defendants are wrong on all counts.

First, Defendants' claim that the law is unsettled with regard to a class action under the Eighth Amendment fails to take into account this Court's decision in *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), which analyzed commonality and typicality in a class action where prisoners challenged system-wide prison conditions.  Nor does the Supreme Court's decision in *Wal-Mart v. Dukes* require interpretation by this Court in the Eighth Amendment context.  As the district court explained in detail, *Dukes* presented a very different factual setting which is inapplicable to the facts here.

Second, Defendants contend that the district court's decision is manifestly erroneous because *Dukes* compels a different result on the issue of commonality.

But the relevant authority is not *Dukes*, but *Armstrong*, in which this Court addressed system-wide deficiencies in prison conditions. The Court held that "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members . . . individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." 275 F.3d at 868 (internal citations omitted). The same analysis applies here because Plaintiffs are challenging system-wide policies and practices that put all class members at risk of harm. *See also Brown v. Plata*, 131 S. Ct. 1910, 1926 n.3 (2011) (recognizing that individual differences are immaterial when prisoners challenge system-wide deficiencies).

Finally, Defendants attack the district court's analysis on several minor issues, misstating applicable law and asking this Court to reweigh the evidence that the district court carefully considered. Even a cursory review of the opinion below establishes that each finding is supported by substantial evidence. Under these circumstances, the district court's decision cannot be manifestly erroneous.

Critically, defendants' Petition reveals no reason for this Court to hear this appeal now. Defendants at no point suggest that they plan to do anything other than pursue this case to a final, appealable decision on the merits. Thus, an interlocutory appeal would only add expense and uncertainty, as compared to

permitting the parties to proceed to the established trial date, and, if necessary, an appeal after final judgment.

## Statement of Facts

The district court ably summarized the facts presented in support of class certification in its Order. (*See* Order at 1-2, 5-10). The facts necessary to understand the issues on appeal are repeated here.

The named plaintiffs in this action are prisoners housed in various Arizona Department of Corrections ("ADC") prison complexes. Following class certification, they represent roughly 33,000 prisoners within ADC.[1] Defendants are ADC Director Charles Ryan and ADC Division of Health Services Interim Director Richard Pratt.[2] Plaintiffs filed this action in March 2012 challenging the health care provided by ADC (including medical, dental and mental health care)

---

[1] The class size is not "extraordinary," contrary to defendants' unsupported assertion. Pet. at 1. *See, e.g.*, *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 992 (D. Ariz. 2011) *aff'd sub nom. Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) (certifying, in a county with over a million Latinos, a class of all Latinos who had been stopped by the sheriff during the preceding 5 years and into the future); *Agne v. Papa John's Int'l, Inc*., 286 F.R.D. 559, 566-72 (W.D. Wash. 2012) (certifying a national class alleging improper text messages sent to more than 68,000 phone numbers*); Russell v. United States*, 2012 WL 2343369, at *6-9 (N.D. Cal. June 20, 2012) (certifying a nationwide class of 60,557 soldiers and veterans); *Floyd v. City of New York*, 283 F.R.D. 153, 172 (S.D.N.Y. 2012) (certifying class "likely to be well over one hundred thousand").

[2] Health care within ADC has been outsourced to private contractors, first to Wexford Health Services in July 2012, and then, on March 4, 2013, to Corizon, Inc. However, Defendant Ryan "has a continuing duty to ensure that those to whom he delegated functions or duties performed those duties appropriately." (Doc. 175 (Oct. 10, 2012 Order denying Defendants' Motion to Dismiss) at 10).

and unconstitutional conditions of confinement in ADC's isolation units. The suit seeks only prospective declaratory and injunctive relief, and not damages.

Plaintiffs sued under the Eighth Amendment because the system-wide health care provided by ADC and the conditions of confinement in ADC's isolation units place prisoners at a substantial risk of serious harm. Defendants concede both health care and conditions of confinement are governed by written policies applied system-wide. (*See* Doc. 321 (Def. Class Cert. Resp.) at 1 ("ADC policies governing health care and conditions of confinement apply to all facilities and inmates")). Moreover, following privatization of the delivery of health care, ADC monitored medical and mental health care system-wide, and, on September 21, 2012, issued a written "Cure Notification" to its contractor, Wexford. (Order at 5, citing Doc. 240, Ex. EE). The Cure Notification identified numerous systemic deficiencies throughout the ADC system and stated, "ADC expects Wexford to effect sustained, systemic operational improvements in the management and delivery of health care services." (Doc. 240, Ex. EE, at ADC027858). ADC demanded correction of the listed deficiencies within 90 days. Wexford objected because the problems were overwhelmingly systemic, explaining that the deficiencies stemmed from "long-standing issues, embedded into ADC health care policy and philosophy." (*Id*. at 7, citing Doc. 240, Ex. FF). Its response also

- 4 -

called the ADC healthcare system "extremely poor," "sub-standard," and "dysfunctional." (Doc. 240, Ex. FF, at ADC027942-43).

Plaintiffs moved for class certification in November 2012. In addition to the Cure Notification correspondence, plaintiffs supported the motion with hundreds of pages of ADC's monitoring reports and internal documents, testimony by ADC health care staff, and declarations from all fourteen named plaintiffs and from experts on prisoner medical care, mental health care, dental care, and isolation conditions. These experts reviewed the policies and procedures of ADC, as well as prisoner medical records, and concluded that systemic deficiencies in ADC care create a substantial risk of serious harm to all prisoners. (Doc. 240, Exs. B-E).

For example, Plaintiffs' medical care expert, Dr. Robert Cohen, opined that prior to and since privatization, Defendants "have neglected the serious medical needs of the Arizona state prisoners by failing to manage, support, supervise and administer medical care to prisoners in the ten state complexes. Because of this neglect, these prisoners are at serious risk of harm, and in some cases, death." (Order at 5 (citing Doc. 240, Ex. C, ¶ 5)). Defendants' own documents detailed serious systemic problems in the health care system. ADC found "[i]nadequate staffing levels in multiple program areas at multiple locations," "forcing existing staff to work excessive hours, creating fatigue risks." (Doc. 240, Ex. EE at ADC027858). ADC has responded to its nursing staff shortage with a statewide

- 5 -

practice of hiring temporary nurses from registries, but ADC acknowledges "[p]roblems of poor communication and lack of training are only increased when registry is used." (*Id*., Ex. SS, at ADC028164; *see also* Ex. AAA, at ADC027890-96; Ex. II, at ADC027911 (registry nurse already under investigation from the State Board of Nursing put more than 100 prisoners at risk of Hepatitis C infection by using a contaminated needle in insulin later injected into other prisoners)).

Plaintiffs' dental care expert, Dr. Jay Shulman, described systemic deficiencies in ADC dental care that "place all inmates at risk of preventable pain, but also of teeth decay and unnecessary loss of teeth." (Order at 8 (citing Doc. 240, Ex. D, ¶ 3)). He noted ADC does not employ enough dentists statewide to meet the needs of the class, and, to compound matters, unlicensed dental assistants have too much discretion and too large a role in examining patients. (Doc. 240, Ex. D, ¶ 5).

Regarding mental health care, Dr. Pablo Stewart opined that "the shortage of mental health staff, delays in providing or outright failure to provide mental health treatment, and the gross inadequacies in the provision of psychiatric medications are statewide systemic problems." (Order at 9 (citing Doc. 240, Ex. B, ¶ 6)). ADC's Mental Health Contract Monitor wrote that psychiatry staffing is "grossly insufficient … [and] so limited that patient safety and orderly operation of [ADC] facilities may be significantly compromised." (Doc. 240, Ex. KK, at

ADC027770).  ADC doctors testified to the dangerous policy of expecting non-psychiatrist physicians to refill prescriptions for patients they had never seen and for psychiatric medications with which they are unfamiliar.  (*Id.*, Ex. W, at 84:10-87:14; Ex. MM, at ADC028113; Ex. C, ¶ 40).  No ADC policy requires that those on suicide watch be evaluated face-to-face by a psychiatrist, and unlicensed mental health staff may terminate suicide watch.  (*Id.*, Ex. T at 164:15-18; 234:12-235:16).

Dr. Craig Haney opined that ADC's failure to "have and implement policy" preventing seriously mentally ill prisoners from being placed in isolation units was "[c]ontrary to sound correctional practice and the weight of psychological and psychiatric opinion."  (Order at 10–11 (citing Doc. 240, Ex. E, ¶ 54)).  Plaintiffs also provided evidence that the ADC's policy of subjecting mentally ill prisoners—even those on psychotropic medications—to the use of chemical agents in isolation units poses a substantial risk of harm.  (Doc. 240, Ex. E, ¶ 48).

The district court certified the class on March 6, 2013.  In its order, the court noted the evidence excerpted above and found that "Plaintiffs' expert declarations, largely unrebutted at this juncture, are sufficient to establish that ADC's practices or customs in the provision of health care rise to the level of deliberate indifference that places inmates at a substantial risk of serious harm."  (Order at 14–15).  Fact discovery is currently underway, and trial is set for October 20, 2014.  (Doc. 389).

## Question Presented

The district court certified a class of prisoner plaintiffs seeking injunctive relief regarding defendants' system-wide practices and policies. Is this a rare case where the legal issues are so unsettled and the lower court decision so manifestly erroneous that this Court should grant interlocutory review?

## Argument

### I.  THE PETITION DOES NOT MEET THE TEST FOR RULE 23(F) REVIEW

This Court "begin(s) with the premise that Rule 23(f) review should be a rare occurrence" because class certification decisions "'present familiar and almost routine issues that are no more worthy of immediate appeal than many other interlocutory rulings.'"  *Chamberlan,* 402 F.3d at 955, 959 (quoting Rule 23 advisory committee's notes).  "Interlocutory appeals are generally disfavored because they are 'disruptive, time-consuming, and expensive.'"  *Id.* at 959 (explaining that such appeals "add to the heavy workload of the appellate courts, require consideration of issues that may become moot, and undermine the district court's ability to manage the class action") (citations omitted).

Rule 23(f) review is ordinarily limited to three situations: (1) when the class certification decision is both "questionable" and effectively ends the litigation for reasons independent of the merits (i.e., a "death knell" situation); (2) when the decision presents an unsettled issue of class action law that is likely to evade later

review; or (3) when the decision is "manifestly erroneous." *Id.* Defendants argue that the second and third criteria apply here, but their mere disagreement with the district court, and with the concept of civil rights litigation generally, does not make this a rare case that merits extraordinary interlocutory review.

### A. The Class Certification Order Involves Routine Issues of Law Unlikely to Evade Review after Final Judgment.

Rule 23(f) can be invoked if the class certification decision presents "an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally," *and* the issue of law is "likely to evade end-of-the-case review." *Id.* Defendants overplay the first prong of this requirement, and ignore the second.

Despite defendants' claims that district courts are left adrift on Eighth Amendment class certification issues, the district court here did not lack applicable precedent. *Armstrong*, cited multiple times by the district court, also addressed class certification of prisoners' claims related to their conditions of confinement. (*E.g.*, Order at 4, 18). Although the claims in *Armstrong* were brought under the Fourteenth Amendment and Americans with Disabilities Act rather than the Eighth Amendment, the applicable class action analysis is the same. *See also Pierce v. Cnty. of Orange,* 526 F.3d 1190, 1199–1200 (9th Cir. 2008) (addressing propriety of class certification in Fourteenth Amendment challenge to jail conditions). The court below also relied on Supreme Court precedent, as well as Ninth Circuit cases

- 9 -

on both Eighth Amendment claims and class certification. (*See* Order at 3–4, 11–14, 18 (discussing governing standards for commonality and typicality analysis)). Thus Defendants' assertion that this Court has never addressed "the propriety of certifying an Eighth Amendment Claim" is both inaccurate and irrelevant.[3]

Defendants' real complaint is that the district court did not find *Wal-Mart Stores, Inc. v. Dukes* dispositive of certification of this class. 131 S. Ct. 2541 (2011). As explained below, the district court correctly reasoned that *Dukes* offers limited guidance in this case. Accordingly, this Court's general guidance on the application of *Dukes* is not a critical issue of law directly related to this case, and an appeal at this juncture is unnecessary. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 84–85 (2d Cir. 2004) (rejecting 23(f) appeal because the issue was only remotely related to the actual district court certification decision).

Critically, defendants do not argue that class certification will evade review after the underlying merits are addressed. Nor could they, as this Court can and does review class certification in prisoner cases after final judgment. *See Armstrong*, 275 F.3d at 867–70. They do not claim crippling liability, or that they will be forced into settlement. Even if defendants had succeeded in showing an

---

[3] In addition to addressing certification of similar claims in *Armstrong* and *Pierce,* this Court has addressed Eighth Amendment class certification in *Hawkins v. Comparet-Cassani,* 251 F.3d 1230 (9th Cir. 2001) (addressing class certification of prisoners who challenged usage of stun belts under the Eighth Amendment, and reversing class certification based on standing).

unsettled question of law, their failure to show that the decision will evade review

"alone[] establishes an adequate basis to deny the petition." *Sumitomo Copper*

*Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 142 (2d Cir. 2001).[4]

**B.   The District Court's Order is Not Manifestly Erroneous.**

This Court grants Rule 23(f) petitions for "manifest error" only in extremely

limited circumstances of significant error by the district court.  "Any error must be

truly 'manifest,' meaning easily ascertainable from the petition itself.  If it is not,

then consideration of the petition will devolve into a time consuming consideration

of the merits, and that delay could detract from planning for the trial in the district

court."  *Chamberlan*, 402 F.3d at 959.  Class certification decisions "rarely" give

rise to such legal errors, however, "because class actions typically involve complex

facts that are unlikely to be on all fours with existing precedent."  *Id. at* 962

(citation omitted).

Defendants' arguments on this standard merely rehash their arguments

before the district court regarding the meaning of *Dukes* and the standard of proof

for Eighth Amendment claims.  As they did below, defendants fail to apprehend

---

[4] Defendants devote most of their argument on this issue to decrying the "trend" of expensive prisoner class actions.  (Pet. at 7–9 (citing, *e.g.*, *Plata*)).  But the lengthy judicial oversight and legal costs incurred in California result not from the lack of class certification guidance, but rather from that state's persistent failures to comply with court orders.  *See Plata*, 131 S. Ct. at 1922–28 ("This case arises from serious constitutional violations in California's prison system.  The violations have persisted for years.  They remain uncorrected.").

the constitutional injury claimed by plaintiffs: that defendants' system-wide policies and practices subject plaintiffs to a substantial risk of serious future harm, entitling them to injunctive relief. Accordingly, defendants' arguments—based almost entirely upon cases seeking damages for past injuries—miss the mark. That these meritless arguments were rejected by the district court does not make the district court's opinion erroneous, let alone manifestly erroneous on its face.

### 1. Commonality

Plaintiffs seek injunctive relief under the Eighth Amendment. That Amendment is violated when prison officials, acting with deliberate indifference, subject prisoners to "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). In other words, "the constitutional injury *is* the exposure to the risk of harm." (Order at 13 (citing *Brown v. Plata*, 131 S. Ct. 1910, 1926 n.3)). Plaintiffs have identified system-wide ADC policies and practices—regarding both health care and conditions in isolation—that have caused them, and many other Arizona prisoners, serious physical or psychiatric injury, and in some cases death. Those policies and practices apply to all Arizona prisoners and thus place the plaintiffs and other class members at continuing risk of harm. As the Supreme Court recognized in *Plata* (a state-wide prisoner health care class action), "all prisoners in [the state] are at risk so long as the State continues to provide inadequate care." 131 S. Ct. at 1940. Because plaintiffs and other class members

are subject to a substantial risk of harm from defendants' policies and practices, the commonality requirement is easily met.

This is the "common legal theory" discussed by the district court—that all of the plaintiffs complain of the same risk caused by the same conduct—not, as defendants derisively claim, that all of the plaintiffs merely have Eighth Amendment claims. (Pet. at 1, 9–10). Because both the cause of injury (Defendants' system-wide practices) and the injury (the substantial risk of serious harm) are the same, the district court could find that "litigating the adequacy of ADC's health care to all inmates 'depend[s] on a common contention . . . of such a nature that it is capable of classwide resolution.'" (Order at 15 (quoting *Wang v. Chinese Daily News*, ____ F.3d ____, 2013 WL 781715, at *4 (9th Cir. Mar. 4, 2013))). The court further defined the question by certifying particular practices for which commonality exists—analysis ignored by defendants. (Order at 16–18). Moreover, as the court put it, "the answer to that question is 'apt to drive the resolution of the litigation' and would form the basis for whether an injunction directing Defendants to remedy any unconstitutional conditions is appropriate." (Order at 11 (citing *Dukes*, 131 S. Ct. at 2551)). Thus, contrary to defendants' claims, the district court did consider whether the common questions raised are capable of generating a common answer in a class proceeding. It then proceeded

to discuss in detail plaintiffs' evidence showing that the constitutional deficiencies occur system-wide. (*See* Order at 12–18).

Defendants also take issue with the district court's discussion of differences between the individual named plaintiffs. As they did below, they claim that the specific differences in the individual plaintiffs' experiences with the health care system and placement in isolation should defeat class certification. They now claim that the district court's failure to accept their argument was clear error. (Pet. at 13–16).

Defendants' position relies on the mistaken premise that plaintiffs' claims are merely a collection of 33,000 individual damages claims. Rather, the district court correctly recognized that the class claims allege that all prisoners are at a risk of injury from system-wide deficiencies, and that the risk alone—not the physical or psychological consequences of that risk coming to pass—is the injury common to the class. No individualized evaluation is required when prisoners mount an injunctive challenge to system-wide deficiencies, as the Supreme Court confirmed in *Plata*, which is materially indistinguishable on this point:

> Because plaintiffs do not base their case on deficiencies in care provided on any one occasion, this Court has no occasion to consider whether these instances of delay— or any other particular deficiency in medical care complained of by the plaintiffs—would violate the Constitution under *Estelle v. Gamble*, 429 U.S. 97, 104– 105 (1976), if considered in isolation. Plaintiffs rely on system-wide deficiencies in the provision of medical and

> mental health care that, taken as a whole, subject sick and
> mentally ill prisoners in California to "substantial risk of
> serious harm."

131 S. Ct. at 1926 n.3 (citation omitted).[5]

The district court's conclusion on this point is amply supported by Circuit precedent.[6] Defendants' reliance on *Dukes* to argue otherwise is, as it was below, misplaced. Individual differences defeated commonality in *Dukes* because Wal-Mart did not centrally control employment decisions, and without centralized control of the decisions alleged to give rise to plaintiffs' Title VII injury, there was no "common answer" to be found. 131 S. Ct. at 2552. As the district court stated, "[t]hat lack of commonality contrasts with this case, where all inmates are subjected to Defendants' actions or lack thereof, because they have the sole responsibility for health care policy." (Order at 13).

*Dukes*' applicability is also limited because the plaintiffs in this case seek only injunctive relief. Cases seeking monetary relief for class members involve detailed inquiries into individual damages that complicate a court's task of identifying common questions that have common answers. *See, e.g., Dukes*, 131 S.

---

[5] Justice Scalia articulated Defendants' argument that certification in a statewide class action regarding prisoner health care is improper, but garnered support of only one other Justice. *Plata*, 131 S. Ct. at 1952 (Scalia, J., dissenting).

[6] *See, e.g.*, *Armstrong*, 275 F.3d at 868 (class members' differing disabilities, and thus needs for different accommodations, did not defeat commonality in ADA challenge); *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir. 1998) (commonality not defeated by class members' differing experiences with INS agents and offices).

Ct. at 2557 (holding that Rule 23(b)(2) prohibits certification "when each class member would be entitled to an individualized award of monetary damages"); *see also Comcast v. Behrend*, 569 U.S. ___, No. 11-864, slip. op. at 6–7 (Mar. 27, 2013) (reversing class certification because the lack of a class-wide damages model meant damage calculations would swamp individual issues, in violation of Rule 23(b)(3)). *Dukes*' instruction regarding individual differences is thus inapplicable to an Eighth Amendment claim seeking only injunctive relief.

The district court's analysis is reasoned and detailed, and not clearly erroneous. (*See* Order at 13). Accordingly, its findings on commonality do not provide grounds for a Rule 23(f) appeal.[7]

---

[7] Defendants' assertion that the "majority" of courts agree that individual differences defeat commonality is groundless. (*See* Pet. at 14–15 n. 6). It is misleading to limit comparable cases to "Eighth Amendment health care cases" when many cases seeking class certification for unconstitutional conditions of confinement are brought under the Fifth or Fourteenth Amendment. And of the five cases defendants cite, only three substantively discuss commonality and all are distinguishable here: in *Mathis v. GEO Grp., Inc.*, 2012 WL 600865 (E.D.N.C. Feb. 23, 2012), the court denied class certification because the plaintiff did not present any evidence of the practices referenced in the complaint; and in both *Schilling v. Kenton Cnty., Ky.*, 2011 WL 293759 (E.D. Ky. Jan. 27, 2011) and *Smith v. Sheriff of Cook County*, 2008 WL 4866071 (N.D. Ill. July 16, 2008) the court denied certification in part because individual damages calculations would be unworkable. Cases granting class certification on Eighth Amendment claims, using analysis consistent with that of the district court, continue to be common after *Dukes*. *See Chief Goes Out v. Missoula Cnty.*, 2013 WL 139938 (D. Mont. Jan. 10, 2013); *Ind. Prot. & Advocacy Servs. Comm'n v. Comm'r*, 2012 WL 6738517 (S.D. Ind. Dec. 31, 2012); *Rosas v. Baca*, 2012 WL 2061694 (C.D. Cal. June 7, 2012); *Butler v. Suffolk Cnty.*, --- F.R.D. ---, 2013 WL 1136547 (E.D.N.Y. Mar. 19, 2013).

### 2.        Typicality

Defendants fault the district court for a "perfunctory" discussion of typicality, but, as the district court explained, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  (Order at 18 (citing *Dukes*, 131 S. Ct. at 2551 n.5)).  Defendants further misstate the law by claiming that variations between named plaintiffs destroy typicality, when the relevant inquiry is whether named plaintiffs' injuries are similar to those of unnamed plaintiffs and occur as a result of the "same, injurious course of conduct."  (Order at 18 (*citing Armstrong*, 275 F.3d at 869)).  Here, all class members are at the same risk from defendants' system-wide policies and practices; that the named plaintiffs have suffered varying physical injuries as a result is irrelevant.  Far from defeating typicality, such variation among named plaintiffs ensures that the composition of the class is better reflected by the named plaintiffs.  *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (typicality satisfied where "[t]he named plaintiffs . . . include a very broadly selected cross-section of the different categories of Boeing employees").  Accordingly, the court's finding on typicality is not manifest error.

### 3.        Rule 23(b)(2)

Defendants repeat their arguments below regarding the district court's ability to craft an injunction that would satisfy Rule 23(b)(2).  When this case represents, as the district court said, the "quintessential type of claims that Rule 23(b)(2) was

meant to address," it is hardly manifest error to refuse to base a class certification decision on hypothetical difficulties in crafting a future injunction. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2009) (Rule 23(b)(2) is satisfied when "class members seek uniform relief from a practice applicable to all of them").

Defendants rely on *Shook v. Board of County Commissioners*, 543 F.3d 597 (10th Cir. 2008). Not only is *Shook* not the law of this Circuit, but the court there strongly suggested that, while the lower court did not abuse its discretion in denying class certification, certifying the class would have been the better decision. 543 F.3d at 600. *Shook* also reaffirmed that (b)(2) certification is appropriate where, as here, class members' injuries are "sufficiently similar that they can be addressed in an single injunction that need not differentiate between class members." *Id.* at 604.

Further, as the district court correctly explained, *Shook* does not require class plaintiffs "'to come forward with an injunction that satisfied Rule 65(d) with exacting precision at the class certification stage'" as long as "'all class members seek the exact same relief as a matter of . . . constitutional right.'" (Order at 20 (citing *Shook*, 543 F.3d at 606, and *Rodriguez*, 591 F.3d at 1126)). The district court correctly found that an injunction in this case would comply with *Shook* because the "remedy in this case would not lie in providing specific care to specific

inmates" but rather "the level of care and resources would be raised for all inmates." (Order at 21 (citing *Shook*, 543 F.3d at 605)).[8]

### 4. System-wide practices

Defendants' argument regarding system-wide practices repeats the argument made in their motion for reconsideration to the district court: that the court erroneously interpreted the Cure Notification as documenting deficiencies at all ADC complexes.[9] Within 48 hours of the filing of that motion, the district court denied it, rebuking defendants for taking its statements out of context and highlighting the other significant evidence supporting class certification that it had discussed in the Order. (*See* Defendants' Amended Petition, Attachment 1).

Defendants also appear to argue that the evidence presented by plaintiffs is insufficient to demonstrate system-wide practices. But this argument ignores the district court's finding that "[t]he Cure Notification relied on much of the same evidence Plaintiffs submit in support of their motion" (Order at 7), and the court's reliance on plaintiffs' "largely unrebutted" expert declarations. (Order at 14).

---

[8] Defendants also assert that the certification order violates the Prison Litigation Reform Act. (Pet. at 19). But "any reference at the class certification stage to the PLRA's limitations on the district court's ability to grant relief [is] error." *Shook*, 543 F.3d at 613.

[9] Defendants attached their Motion for Reconsideration to their Petition. (Pet., Attachment 2). The Motion includes a declaration presenting evidence not provided to the district court during briefing on class certification, which the Court should not consider because it is "new evidence furnished for the first time on appeal." *See Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999).

Defendants' argument is simply an improper request that this Court weigh the evidence differently than did the district court. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 798 (9th Cir. 2005) ("[I]t is not [this Court's] task to weigh the evidence presented to the district court").

## Conclusion

The district court's class certification decision was well reasoned and well supported. It is not manifestly erroneous on its face, nor does it address issues that will evade later review. Plaintiffs respectfully request that this Court deny Defendants' Petition to Appeal.

Respectfully submitted on this 4th day of April, 2013.

**PERKINS COIE LLP**

By: /s/ Amelia M. Gerlicher
    Daniel C. Barr
    Amelia M. Gerlicher
    Kirstin T. Eidenbach
    2901 North Central Avenue
    Suite 2000
    Phoenix, AZ 85012-2788

*Attorneys for Prisoner Plaintiffs-Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system as follows:

Daniel P. Struck
Nicholas D. Acedo
STRUCK, WIENEKE &LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed ONE copy of the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

Michael E. Gottfried
OFFICE OF THE ATTORNEY GENERAL
1275 W. Washington Street
Phoenix, Arizona 85007-2926

 /s/ Amelia M. Gerlicher
Amelia M. Gerlicher